THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WALBERTO HERNÁNDEZ-REYES,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ARCOS DORADOS PUERTO RICO, LLC**<br><br>*Defendant.* | Case No. 23-01263 (MAJ) |

### OPINION AND ORDER

### I.     Introduction

Before the Court is Walberto Hernández-Reyes' ("Plaintiff") Motion for Attorneys' Fees, Costs, and Litigation Expenses. (**ECF No. 80**). Plaintiff filed a complaint against Arcos Dorados Puerto Rico, LLC ("Defendant"), alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act ("ADA"). (**ECF No. 51**). The operative complaint ("Complaint") alleged that architectural barriers in multiple McDonald's restaurants across Puerto Rico failed to comply with ADA Standards for accessible design. (**ECF No. 51**). For the reasons outlined below, the Court grants in part and denies in part Plaintiffs' Motion.

### II.    Background

On April 18, 2023, Faustino Xavier Betancourt-Colón ("Betancourt-Colón") filed a lawsuit against Defendant in the Court of First Instance in Carolina, Puerto Rico. (**ECF No. 1 at 1 ¶ 1**). Approximately one month later, Defendant removed the case to the District Court for the District of Puerto Rico. (**ECF No. 1**). Betancourt-Colón, a protected person under the ADA, alleged that the physical conditions of stores owned and operated

by Defendant in Puerto Rico were in violation of the minimum requirements imposed on business owners under the ADA. (**ECF No. 21-2 at 3–4 ¶¶ 5–7**). Betancourt-Colón was solely represented from the start of these proceedings and throughout the entire case by Attorney José A. Vélez-Colón ("Vélez-Colón").

In December 2023, Plaintiff Hernández-Reyes filed a lawsuit against Defendant in the Court of the First Instance in Bayamón, Puerto Rico. (**ECF No. 39 at 1 ¶ 1**). Defendant removed the case to the District Court for the District of Puerto Rico on December 29, 2023. (**ECF No. 1**). Like Betancourt-Colón, Plaintiff alleged in his complaint that a McDonald's restaurant owned and operated by Defendant was noncompliant with the terms of the ADA. (**ECF No. 39 at 1 ¶ 2**). Also like Betancourt-Colón, Plaintiff was solely represented throughout the entire proceedings in this case by Vélez-Colón.

On March 4, 2024, the parties jointly moved to consolidate the two cases. (**ECF No. 39**). Vélez-Colón was to remain the attorney for both Plaintiffs. (**ECF No. 39 at 1–2**). The Court granted the motion. (**ECF No. 40**). Then, on June 10, 2024, Betancourt-Colón passed away. (**ECF No. 48**). Accordingly, Betancourt-Colón's claims were dismissed with prejudice. (**ECF No. 50**).

From the outset of the litigation, the parties began negotiations to reach a settlement agreement in the form of a consent decree covering all the restaurant locations mentioned in the Complaint, as well as additional restaurants that were included after the filing of the Complaint. On October 17, 2024, the remaining parties jointly moved the Court to adopt the Consent Decree. (**ECF No. 66**). On October 21, 2024, the Court entered an Order granting the motion. (**ECF No. 68**).

The Consent Decree left to the Court the task of determining "the number of hours and the amount of fees that shall be awarded to [Plaintiff's] counsel." (**ECF No. 66-1 at 6–7 ¶ 9**). On November 4, 2024, Vélez-Colón filed the instant Motion for Attorneys' Fees. (**ECF No. 80**). Attached to the motion, Vélez-Colón submitted an invoice listing all work performed for this case ("the Invoice"). (**ECF No. 80-2**). Based on the Invoice, which is dated November 4, 2024, Vélez-Colón invoiced a total of $16,662.50 for time entries and $155 for expenses, amounting to an award of $16,817.50. (**ECF No. 80-2 at 18**). Specifically, the Invoice bills for 66.8[1] hours of work at a base rate of $250 per hour. (**ECF No. 80-2 at 18**). However, the Invoice submitted as an exhibit to the instant motion was not the first billing statement produced by Vélez-Colón. Instead, a first invoice was produced by Plaintiff to Defendant on September 19, 2024. ("the September billing statement"). (**ECF No. 88-1**). The two invoices differ substantially. Whereas the September billing statement included 34.50 hours of work billed at a rate of $350, (**ECF No. 88-1**), the final Invoice included a total of 66.8 hours of work billed at a base rate of $250. (**ECF No. 80 at 14**); (**ECF No. 80-2**).

Plaintiff argues that the total fee set forth in the Invoice represents a reasonable fee which "accurately reflect[s] the complexity and scope of the work involved in this case." (**ECF No. 80 at 6**). Defendant disagrees. On December 3, 2024, Defendants filed an Opposition to Plaintiff's Request for Attorney's Fees. (**ECF. No. 88**) Defendant argues that the hours listed in the Invoice should be reduced to 33.20 hours at an hourly rate of no more than $200 per hour. (**ECF No. 88 at 25**). Defendant also argues that the total

---

[1] The Court notes that, at one point in the Motion, Plaintiff states that only 46.7 hours of billable work were performed in connection with this case. (**ECF No. 80 at 4**). Because that number does not correspond to any invoice presented before the Court, the Court assumes that this statement was made in error.

number of hours listed on the invoice is unreasonable. Plaintiff filed a Reply on December 12, 2024, (**ECF No. 91**), and on December 20, 2024, Defendant filed a Sur-reply. (**ECF No. 94 at 7**).

### III. Applicable Law and Analysis

"Under the ADA, this court in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." *Betancourt-Colón v. Supermercados Máximo, Inc.*, No. CV 22-1548 (BJM), 2025 WL 89129, at *1 (D.P.R. Jan. 14, 2025) (quoting 42 U.S.C. § 12205) (quotations omitted). To determine a reasonable award, the Court begins by constructing the lodestar. *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). "In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate[.]" *Id*. at 13. "The court should calculate the time counsel spent on the case, subtract duplicative, unproductive, or excessive hours, and . . . apply prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys)." *González-Nieves v. Municipality of Aguadilla,* Civ. No. 13-01132, 2016 WL 297432, at *2 (D.P.R. Jan. 22, 2016) (quotations and citations omitted). After reaching a figure, the Court can adjust the lodestar "based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter." *Torres-Rivera v. Oneill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citations omitted). In this context, reasonableness "is largely a matter of informed judgment, and a court should consider issues of equity in determining the most fair and sensible solution for apportioning the fee award.*" Id*. (quotations and citations omitted). "The party seeking the award has the burden of producing materials that support the request." *Hutchinson*, 636 F.3d at 13. Plaintiff therefore must carry "the burden of establishing entitlement to

[the] award and documenting the appropriate hours expended[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In addition, Plaintiff "must carry the burden of establishing the prevailing hourly rate . . . in the community for the performance of similar legal services by comparably credentialled counsel." *Hutchinson*, 636 F.3d at 16.

### A.  Reasonableness of the Hourly Rate

To determine a reasonable hourly rate the Court "appl[ies] prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Hutchinson,* 636 F.3d at 13 (quotations and citations omitted). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." *Rodríguez v. Int'l Coll. of Bus. & Tech. Inc.*, 356 F. Supp. 2d 92, 96 (D.P.R. 2005). Plaintiff requests an hourly rate of $250. (**ECF No. 80-2**). Defendants argue that a base hourly rate of no more than $200 is reasonable. (**ECF No. 88 at 5 ¶ 2**).

In recent cases involving similar claims, other judges within this District have consistently awarded Vélez-Colón an hourly fee of $200. In each of those cases, the court found that the claims were not novel or complex.  *See Betancourt-Colón v. Acoba Realty Dev., Inc.,* Civ. No. 20-1424, 2024 WL 3063391, at *4 (D.P.R. June 18, 2024) (noting that the case was not complex, "more so considering that Attorney Vélez-Colón's line of expertise is in ADA cases, and he uses the same testers as Plaintiffs"); *see also Betancourt-Colón v. Supermercados Máximo, Inc.,* Civ. No. 22-1548, 2025 WL 89129, at *2 (D.P.R. Jan. 14, 2025) (explaining that, contrary to the "assertion that this case was highly complex and time-consuming to litigate, Vélez-Colón served as counsel on six other cases in the federal court with the same plaintiff making essentially the same ADA allegations"); *see also Betancourt-Colón v. Supermercados Máximo, Inc.,* Civ. No. 22-01274, 2024 WL

4002830, at *4 (D.P.R. Aug. 29, 2024) (noting that the case "was not particularly challenging or unique"). The ADA claims filed in this case are essentially identical to those raised in the cases cited above, each of which also requested injunctive relief under 42 U.S.C. § 12188 to eliminate architectural barriers to accessibility at places of public accommodation. The Court finds that here, as in those prior cases, the claims litigated by Vélez-Colón were not highly complex or novel. It is clear that Vélez-Colón routinely litigates similar claims in this District, and he provides no reason to believe that the claims litigated in this case are any more challenging or unique than those raised in past cases. The Court therefore finds that an hourly fee of $200 is reasonable.

Plaintiff's attempts to distinguish this case are not persuasive. First, Plaintiff argues that this case involved "an additional layer of complexity" because it was consolidated with another case. (**ECF No. 80 at 5**). Consolidation was justified, however, because the two cases raised the same claim against the same restaurant facility. (**ECF No. 39 at 2 ¶ 5**).[2] There is thus no reason to believe that consolidation rendered the legal issues in this case any more sophisticated or complex. In addition, Plaintiff argues that, unlike the cases cited above, "which . . . involved single locations with limited accessibility issues," this case "demanded a sophisticated multi-facility approach" which "demanded an extraordinary level of legal and technical expertise that far exceeds the demands of typical single-location cases." (**ECF No. 91 at 2**). Yet Plaintiff never explains why an ADA lawsuit targeting multiple facilities demands greater legal sophistication or technical expertise. While it is likely that such a case may require more extensive investigation and result in a higher number of billable hours, Plaintiff provides no reason

---

[2] As the Court explains below, were this not the case, Vélez-Colón would not be awarded a fee as to any of the hours performed for Plaintiff Betancourt-Colón. *See infra* Section III.B.ii.

to believe that the involvement of multiple non-compliant facilities made the legal dispute between the parties any more complex. Nor does Plaintiff provide any other factual support for the contention that the case involved "complex issues" of "exceptional" novelty, beyond asserting vaguely that the settlement process "required the implementation of sophisticated digital solutions[.]" (**ECF No. 91 at 2**). Once again, however, Plaintiff never attempts to explain what this means or why it rendered this case exceptionally novel. Plaintiff has thus failed to meet his burden to demonstrate that his requested hourly rate is reasonable. *Hutchinson*, 636 F.3d at 13.

The Court is also not persuaded by Plaintiff's argument that the recent cases awarding Vélez-Colón $200 per hour misapprehend the prevailing rate in the community. Plaintiff cites to *Skytec, Inc.,* where the court noted that experienced attorneys may command $250-$300 in Puerto Rico. *Skytec, Inc., v. Logistics Sys. Inc*, Civ. No. 15-2104, 2019 WL 1271459, at *5 (D.P.R. Mar. 15, 2019). However, in *Skytec* the only attorney who received an hourly fee award of more than $200 had significantly more experience than Vélez-Colón, with thirty-five years of litigation experience and seven different bar admissions. *Id*. at *5. Moreover, a prior case awarding Vélez-Colón an hourly rate of $200 considered this precedent and determined that $200 was a more appropriate fee. *Betancourt-Colón v. Supermercados Máximo, Inc.*, 2025 WL 89129 at *2. Plaintiff offers no convincing reason to depart from that precedent.[3]

---

[3] Plaintiff also argues that, adjusted for inflation, the prevailing rates identified in *Skytec* would reach approximately $365 per hour in present day real value. (**ECF No. 91 at 4–5**). As noted above, the Court finds that the language from *Skytec* invoked by Plaintiff is not controlling in this case. More importantly, because the Court is following precedent from earlier this year in which Vélez-Colón was awarded a fee of $200 per hour, there is no need to adjust the prevailing rate for inflation.

In summary, considering prevailing rates within the community, the complexity of the issues in this case, and Vélez-Colón's qualifications, competence, experience, reputation, and skill, the Court finds that an hourly rate of $200 is reasonable.

### B. Reasonableness of Time Spent

Defendant argues that the number of hours billed in the Invoice is not reasonable. Specifically, Defendant raises three arguments. First, Defendant argues that all entries pre-dating September 2024 which were not originally included in the September billing statement should be eliminated. (**ECF No. 88 at 11–12**). Second, Defendant argues that all entries for work performed for the Betancourt-Colón case and prior to consolidation should be eliminated, as Betancourt-Colón is not a "prevailing plaintiff" entitled to an award. (**ECF No. 88 at 11**). Third, Defendant identifies several billing entries that it characterizes as excessive, unnecessary, or redundant that it argues should be reduced or eliminated altogether. (**ECF No. 88 at 12**). The Court will address each issue in turn.

#### i. New Entries not included in the original billing invoice

An attorney "who intend[s] to seek counsel fee awards ordinarily must ensure that contemporaneous time records are kept in reasonable detail." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001); *see also Hutchinson*, 636 F.3d at 13 (finding that the materials to support an attorney fees request should include counsel's contemporaneous time and billing records); *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir. 1984) (emphasizing the importance of attorneys keeping detailed, contemporaneous records). Because non-contemporaneous billing records are inherently unreliable, the First Circuit has held that the "absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in

egregious cases, disallowance." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (citations and quotations omitted).

Vélez-Colón provided Defendant a first billing statement on September 19, 2024. (**ECF No. 88-1**). Approximately two months later, on November 4, 2024, Vélez-Colón filed a Motion for Attorney's Fees which included the Invoice at issue in this case. (**ECF No. 80**). The Invoice included thirty-seven (37) new entries that were not included in the original September billing statement and that pre-date the last entry billed in the September billing statement. (**ECF No. 80-2 at 1–12**); (**ECF No. 88-1**).[4] In other words, the Invoice provided to the Court in support of the instant Motion attempts to retroactively supplement the September billing statement with thirty-seven new entries that were not recorded contemporaneously to the work allegedly performed. The 37 entries in question total 23.7 hours.[5] Defendant argues that all such entries should be eliminated, since their late addition "demonstrates that such entries were not contemporaneous to the alleged work performed." (**ECF No. 88 at 11–12**). The Court agrees. As Defendant argues, the circumstances surrounding these entries are "highly suspect[.]" **(ECF. No. 80 at 5).**

---

[4] Defendant alleges that the Invoice includes thirty-nine (39) new entries not recorded contemporaneously to the work performed. (**ECF No. 88 at 4–5**). That is not accurate. While Defendant states that the two entries on July 23, 2024 concerning legal research and legal writing were not included in the September billing statement, (**ECF. No. 88 at 24–25**), the Court finds that they were included. (**ECF No. 88-1 at 6–7**). These entries thus will not be eliminated on this basis.

[5] To be clear, the Court only addresses here the 23.7 hours concerning work that pre-dated the final entry in the September billing statement. The Court is aware that in the September billing statement Vélez-Colón billed 34.5 hours, while in the Invoice he included a total of 66.8 hours. Thus, the discrepancy between the two billing statements amounts to 32.3 hours. But of those hours, only 23.7 hours predated the last entry in the September billing statement on 08/20/2024. The remaining 8.6 hours added to the Invoice represent work performed after the issuance of the September billing statement and will be addressed separately.

Vélez-Colón never provides any explanation for why these 23.7 hours were added to the Invoice. He merely cites generally to "the transparency" of his billing practices.[6] (**ECF. No. 80 at 5**). Yet the billing records lack transparency to the extent that they fail to account contemporaneously for all of the work performed. The law is clear: to qualify for an award of attorney's fees, the party seeking the award is required to maintain detailed, contemporaneous time records. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984). Vélez-Colón's failure to maintain contemporaneous time records thus calls for a reduction of the award. Accordingly, the 23.7 hours in question will not be credited.

### ii. Hours relating to the Betancourt-Colón case, prior to the consolidation of the cases

Pursuant to the ADA, a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." *González-Nieves,* 2016 WL 297432, at *2 (quoting 42 U.S.C. § 1225). To qualify as a "prevailing party" under the attorney fee provision, a plaintiff must obtain at least some relief on the merits of the claim. *Betancourt-Colón v. Acoba Realty Dev., Inc.,* 2024 WL 3063391, at *1 (citations and quotations omitted).

Defendant argues that all Invoice entries predating consolidation and relating solely to Betancourt-Colón's case must be eliminated from the Invoice. (**ECF No. 88 at 11**). To support this contention, Defendant cites to *Rhodes v. Stewart,* 488 U.S. 1 (1988)*,* arguing that, since Betancourt-Colón was never granted any relief before his death, he cannot meet the threshold requirement of being a prevailing party. (**ECF No. 88 at 11**).

---

[6] In addition, Plaintiff cites to *Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992) for the proposition that "the submitted billing records serve as prima facie evidence that the requested hours are reasonable[.]" (**ECF. No. 80 at 4**). Yet *Lipsett* never says anything of the sort. Instead, contrary to Plaintiffs assertion*, Lipsett* specifically provides for the substantial reduction or even disallowance of non-contemporaneously recorded billing records, such as the billing statements in the present case. *Id.* 938. As previously noted, Plaintiff bears the burden of demonstrating the requested hours are reasonable. *Hensley,* 461 U.S. at 437.

Defendant is correct that in *Rhodes*, the Supreme Court held that, where a complainant dies prior to entry of judgment and thereby moots the case, he does not qualify as a "prevailing party" and thus has no right to an award of attorney's fees. *Rhodes,* 488 U.S. 1. at 4.

Yet both parties agree that Betancourt-Colón is not a "prevailing party" and is not entitled to an award of attorneys' fees. (**ECF No. 88 at 11**); *see generally* (**ECF No. 91**). Nevertheless, his death did not moot the entire case. After his death, Plaintiff Hernández-Reyes continued to litigate his claims and reached a settlement agreement with Defendant. (**ECF No. 66**). Hence, Plaintiff Hernández-Reyes is a prevailing party. Defendant does not dispute this. *See generally* (**ECF No. 88).** The Supreme Court has established that where two claims involve a "common core of facts" or are based on "related legal theories", the court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435. The question before the Court is thus whether the hours set forth in the Invoice reasonably secured Plaintiff the relief he sought.

Defendant itself acknowledges that operative Complaint in this case is virtually identical to original complaint filed in Betancourt-Colón's case. (**ECF No. 88 at 2 n.2**) In other words, the claims on which Plaintiff has prevailed are essentially identical to the claims originally filed by Betancourt-Colón. To use Defendant's own words, Plaintiff's claims are effectively a "copy and paste" of the claims filed by Betancourt-Colón. (**ECF No. at 88 at 24**). That description is accurate: the changes to the Complaint after consolidation were limited to format, translation and the addition of one new restaurant. That is precisely why the Court granted consolidation: the two cases involved a common core of facts and were based on identical legal theories. The Court therefore finds that

nearly all hours of work performed for Betancourt-Colón by Vélez-Colón prior to consolidation constitute hours "reasonably expended" to secure Plaintiff the "overall relief" he obtained. *See Hensley*, 461 U.S. at 435.

The Invoice contains one exception. On July 18, 2024, Plaintiff performed 1.5 hours of work to notify the court of Betancourt-Colón's death and move for voluntary dismissal of Betancourt-Colón's claims. Because the hours billed for those tasks represented work that related only to Betancourt-Colón's claims, Plaintiff will not be awarded a fee for those 1.5 hours. (**ECF No. 80-2 at 10**).

### iii. Duplicative, Unnecessary and Excessive Work[7]

Courts in their discretion may reduce attorney's fees "because of (1) the overstaffing of a case, (2) the excessiveness of the hours expended on the legal research or the discovery proceedings, (3) the redundancy of the work exercised, or (4) the time spent on needless or unessential matters." *Hernández-Meléndez v. Puerto Rico*, Civ. No. 14-01493, 2014 WL 4260811, (D.P.R. Aug. 29, 2014) (quotations and citations omitted). "A task may be considered duplicative not only if it was repeated unnecessarily in the scope of the same case, but also if it was already performed in multiple cases brought by the same attorney." *Betancourt-Colón v. Supermercados Máximo, Inc.,* 2025 WL 89129, at *3.

Defendant cites three instances totaling 7.5 hours of duplicative, excessive, or unessential hours billed in the Invoice.[8] First, Defendant argues that the 1.7 hours billed

---

[7] The Court does not address here any entries that were previously eliminated for being recorded non-contemporaneously to the work performed. Those entries were previously eliminated on distinct grounds. Section III.B.i, *supra*.

[8] In addition, Defendant argues that Vélez-Colón submitted duplicative billing entries for work performed on January 2, 2024 by billing .10 hours twice on the same date for the purposes of reviewing a Motion for Extension of Time. (**ECF No. 88 at 17**); (**ECF No. 80-2 at 5**). Defendant requests that .10 hours be eliminated. Upon careful review, the Court finds that Defendant's description of the billing

for "legal writing" on December 12, 2023 were excessive. (**ECF No. 88 at 16**); (**ECF No. 80-2 at 4**). The legal writing in question involved drafting a complaint on behalf of Plaintiff; since this complaint was "virtually identical" to the complaint previously drafted on behalf of Betancourt-Colón, Defendant argues, a reduction from 1.7 to 1.0 hours is warranted. (**ECF No. 88 at 16**). Second, Defendant argues that the 1.4 hours billed on February 12, 2024 are also excessive and should be reduced to .5 hours. (**ECF No. 88 at 20**). That billing entry reflects work performed reviewing the Betancourt-Colón complaint and considering the merits of consolidation. (**ECF No. 80-2 at 7**). Third, Defendant argues that three billing entries for "legal research" performed in July 2024 were unnecessary and excessive. (**ECF No. 88 at 20–21**); (**ECF No. 80-2 at 10**). The "legal research" tasks in question total 4.4 hours and were apparently performed to aid Vélez-Colón in drafting the amended complaint. (**ECF No. 80-2 at 10**). Defendant argues that, because the complaint was effectively a "copy and paste" job requiring no detailed legal research, the hours should be reduced to .30 hours. (**ECF No. 88 at 20– 21**).

Consolidation of the two cases introduced no significant legal or factual changes to the claims before the court: in fact, the only restaurant location originally identified in Hernández-Reyes Reyes' complaint was already included in the Betancourt-Colón complaint. (**ECF No. 39 at 4 ¶ 12**). A comparison of the operative Complaint with the underlying pre-consolidation complaints reveals this fact: as previously noted, the complaints in the two cases were virtually identical. (**ECF No. 21-2**); (**ECF No. 30**);

---

statement is not accurate. On January 2, 2024, the Invoice shows only one billing entry related to review of the Motion for Extension of Time, in addition to other billing entries for reviewing separate orders and docket entries. (**ECF No. 80-2 at 5**). Because Defendant has not articulated a reason to believe that this entry was unreasonable, the Court will award a fee for that .10 hour.

(**ECF No. 51**). Based on the parties' own representations, moreover, consolidation served to streamline the matter: "the parties [found] that consolidation [was] favorable . . . considering that [they were] negotiating a comprehensive settlement agreement" that addressed all of Betancourt-Colón and Plaintiff's claims. (**ECF 39 at 4 ¶ 13**).

Furthermore, Plaintiff makes no attempt to explain why those hours were reasonably necessary. *See generally* (**ECF No. 91**). Plaintiff has thus failed to meet his burden of showing that the challenged hours were reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (noting that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *Hutchinson*, 636 F.3d at 13 ("The party seeking the award has the burden of producing materials that support the request"). The Court therefore finds that the reductions proposed by Defendant are appropriate. Accordingly, the 7.5 hours in question will be reduced to 1.8 hours.

## IV. Conclusion

Considering the above stated reasons, Plaintiffs Motion for Attorney's Fees, Costs and Litigation Expenses is **GRANTED** in part and **DENIED** in part**.** The Court will award a fee of $200 per hour. The number of hours invoiced by Plaintiff was 66.8 hours. Of this total 23.7 hours were eliminated for being non-contemporaneous, 1.2 hours were eliminated for being solely related to Betancourt-Colón's claims, and 5.7 hours were reduced for unessential and excessive work. The total number of hours eliminated amounts to 30.6. Because the Invoice contains a total of 30.6 unreasonable hours, it leaves a total 36.2 hours of billable work. Accordingly, Plaintiff will be reimbursed for attorney's fees for 36.2 hours of work. In addition, Plaintiff will be reimbursed $155 for costs and expenses. In total, Plaintiff is entitled to an attorney's fee award of $7, 395.00.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of May, 2025.

<u>**/s/ María Antongiorgi-Jordán**</u>
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**